JUDGE PHILIP MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2020 DEC 28 PM 1:42
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | |
| § | |
| **MULTIPLAN, INC.,** a New York Corporation, § | |
| **NATIONAL CONGRESS OF EMPLOYERS,** § | **EP20CV0318** |
| **INC,** a Delaware Corporation, **HEALTH PLAN** § | |
| **INTERMEDIARIES HOLDINGS, LLC** a § | |
| Delaware Limited Liability Company, and § | |
| **AMERICAN FINANCIAL SECURITY LIFE** § | |
| **INSURANCE COMPANY,** a Missouri Insurance § | |
| Company § | |
| § | |
| **Defendants.** § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER, a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant MULTIPLAN, INC ("Multiplan") is a corporation organized and existing under the laws of New York and can be served via registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

3. Defendant NATIONAL CONGRESS OF EMPLOYERS, INC ("National") is a corporation organized and existing under the laws of Delaware and can be served via registered agent CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

4. Defendant HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC ("Health") is a Limited

1

Liability Company organized and existing under the laws of Delaware and can be served via registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

5. Defendant AMERICAN FINANCIAL SECURITY LIFE INSURANCE COMPANY ("American") is an insurance company organized and existing under the laws of Missouri and can be served via registered agent Chief Financial Officer, 200 East Gaines Street, Tallahassee, Florida 32399.

## JURISDICTION AND VENUE

6. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

7. Personal Jurisdiction. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

8. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

9. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

2

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section

227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

23. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

24. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

25. On December 14, 2020, Plaintiff Callier received a call on his cell phone (915-383-4604) from phone number (915) 860-9806 a spoofed caller ID number displaying Jackson Richard on the caller ID.

26. Plaintiff answered and there was pre-recorded or artificial voice advertising insurance coverage.

27. Plaintiff pressed "one" and was connected to a human being.

28. Plaintiff was then solicited and purchased a health insurance plan from Defendants.

29. Plaintiff did not need, or want, a health insurance policy but purchased and received a policy from Defendants in order to determine who was making the illegal robocalls.

30. On December 14, 2020 Plaintiff received an email Defendants containing the application, benefits, and providers.

31. Plaintiff downloaded the application and discovered it was the Defendants behind the robocall with the pre-recorded or artificial voice.

32. On December 15, 2020 at 11:29 AM Plaintiff received a missed phone call from spoofed phone number 915-860-9536.

33. On December 15, 2020 again at 11:29 AM Plaintiff received a second spoofed phone call from 915-860-9536.

34. Plaintiff answered the phone and again heard a pre-recorded message soliciting health insurance. Plaintiff informed the agent he had just purchased a health insurance policy the previous day.

35. The agent put Plaintiff on hold while he verified the application. The agent confirmed the coverage and ended the phone call after seven- and one-half minutes.

36. On December 16, 2020 Plaintiff received a fourth call from Defendants from spoofed phone number 915-860-1901 advertising insurance with a prerecorded or artificial voice message.

37. On December 11, 2020 Plaintiff received two phone calls from spoofed phone numbers 915-860-2043 and 915-860-5289 advertising insurance with a prerecorded or artificial voice message.

38. Defendants called Plaintiff a minimum of seven times.

39. Defendants employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

40. Defendants and their agents and co-conspirators amassed lists of thousands of potential customers

from public records, and data aggregators and then sent phone calls using artificial or prerecorded voice messages *en masse* to market their products.

41. Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

42. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendant received is not currently available to Plaintiffs but will be revealed through discovery to amplify what is shown below.

43. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant.

44. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the call(s) alleged herein.

45. Each and every call was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

46. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

47. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

48. No emergency necessitated the calls

49. Each call was sent by an ATDS.

50. None of the defendants ever sent Mr. Callier any do-not-call policy.

51. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls

52. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

53. Defendant Health is the trademark owner of MyBenefitsKeeper.

## VICARIOUS LIABILITY OF THE SELLERS

54. These parties are vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

55. The Defendants are the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain the Plaintiff as a client and quoted the Plaintiff their services in dental discounts.

56. The email shows that the beneficial parties who were gaining customers were the Defendants.

57. Defendants authorized a third-party telemarketer to generate prospective customers. Defendants hired a third-party to promote its products and services. Defendants' integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that the third-party telemarketer was the telemarketing department of Defendants.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

58. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found

that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

59. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

60. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

61. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

62. Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

63. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:
- Reduced Device Storage space
- Reduced data plan usage
- Invasion of privacy
- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone
- Reduced battery usage

### The Plaintiff's cell phone is a residential number

64. The calls were to the Plaintiff's cellular phone 915-383-4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation

purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code 305.053

65. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

66. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute

## FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

9.  Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## THIRD CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 305.053)

11. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff BRANDON CALLIER prays for judgment against the defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for at least seven calls.

E.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.  An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.  An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

H.  Such further relief as the Court deems necessary, just, and proper.

Dated:  December 28, 2020                    Respectfully Submitted

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
Callier74@gmail.com

```
Court Name: TEXAS WESTERN
Division: 3
Receipt Number: 300037162
Cashier ID: lgarcia
Transaction Date: 12/28/2020
Payer Name: BRANDON CALLIER
----------------------------------------
CIVIL FILING FEE- NON-PRISONER
 For: BRANDON CALLIER
 Amount:         $402.00
----------------------------------------
PAPER CHECK
 Check/Money Order Num: 1307488333
 Amt Tendered:   $402.00
----------------------------------------
Total Due:       $402.00
Total Tendered: $402.00
Change Amt:       $0.00

CIVIL FILING FEE 3:20-CV-318-PRM
BRANDON CALLIER V. MULTIPLAN, INC
ET AL
```

# Initial Civil Case Assignment (Random)

Case 3:20-cv-00318 has been randomly assigned to:
presiding Judge Philip R. Martinez from deck El Paso Civil - District Judges
referral Judge Leon Schydlower from deck El Paso Magistrate Civil

<u>**Assign another case (Random)?**</u>